UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
NICHOLAS VAGLICA, individually and on
behalf of all others similarly situated,

                Plaintiff(s),

       -against-

RECKITT BENCKISER LLC,

               Defendant(s).
---------------------------------------------------------

MEMORANDUM & ORDER
22-CV-05730 (NGG) (ARL)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Nicholas Vaglica brings various claims against Defendant Reckitt Benckiser LLC ("Reckitt") concerning the allegedly misleading labeling of Defendant's laundry product. He seeks relief on behalf of himself and a proposed class of similarly situated purchasers of the product, asserting claims for (i) violation of various state consumer protection statutes; (ii) deceptive business practices under N.Y. G.B.L. § 349; (iii) deceptive advertising under N.Y. G.B.L. § 350; (iv) breaches of warranty; (v) fraud; and (vi) unjust enrichment. Defendant has moved to dismiss Plaintiff's Amended Complaint (Am. Compl. (Dkt. 10)) in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (*See* Not. of Mot. (Dkt. 12); Def's. Mot. To Dismiss ("Def's. Mot.") (Dkt. 12-1).)

For the following reasons, the Defendant's motion is GRANTED.

I. BACKGROUND[1]

Defendant Reckitt is a Delaware LLC with its principal place of business in New Jersey. (Am. Compl. ¶¶ 30, 35.) Reckitt manufacturers, markets, and sells Lysol brand laundry sanitizer (the

---

[1] The following facts are taken from the Amended Complaint and, for the purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub.*

1

"Product"). (*Id.* ¶ 1.) The Product includes a label on the front that reads: "Kills 99.9% of bacteria." (*Id.*) On the back of the Product, there are several labels written in fine print, including: "Works in Cold Water" and "When you wash your clothes in cold water, bacteria can survive." (*Id.* ¶ 5.) Plaintiff is a citizen of New York who has purchased the Product as recently as July 2022. (*Id.* ¶¶ 29, 38.)

Plaintiff alleges that the Product does not achieve any "meaningful benefit beyond the standard the laundering process." (*Id.* ¶ 25.) To support this, Plaintiff points to the Centers for Disease Control and Prevention ("CDC") concluding that diseases and infections linked to contaminated fabrics are so few that any risk of transmission as a result of the laundering process is less than negligible. (*Id.* ¶ 12.) Carol McLay, an Infection Prevention Consultant, has agreed with the CDC's findings, stating that the transmission of infectious diseases from laundered textiles is "so rare that during the past 43 years, only 12 instances have been reported worldwide." (*Id.* ¶ 15.) Plaintiff further alleges that the majority of Americans wash their clothes in hot water, and that washing in hot water (or any temperature of water), followed by a drying cycle, is sufficient to achieve a reduction in 99.9% of bacteria. (*Id.* ¶ 4.)

Plaintiff pieces this all together to argue that Defendant's labeling, including that the Product kills 99.9% of bacteria on laundry and works in cold water, is "misleading in light of the absence of any evidence that survival of bacteria from a standard laundering process poses any risk." (*Id.* ¶¶ 23-24.) Plaintiff asserts reliance on the labeling, believing it to mean that the Product would provide a "meaningful benefit in terms of safety in the laundering process." (*Id.* ¶¶ 40, 42.) He further alleges that he was unaware

---

*Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022).

of the lack of credible studies on domestic laundry practices showing any potential risk of bacteria survival and transmission from hot, warm, or cold water, detergent, and a drying cycle. (*Id.* ¶ 44.) A reasonable consumer, according to Plaintiff, would not have purchased the Product or paid as much had they known the true facts concerning the Product. (*Id.* ¶ 58.)

Plaintiff brings the instant suit on behalf of himself, as well as a putative class of New York consumers (the "New York Class"), and a putative multi-state class of Alaska, Arkansas, Idaho, Iowa, Montana, New Mexico, Utah, West Virginia, and Wyoming consumers (the "Multi-State Class"). (*Id.* ¶ 49.) Plaintiff asserts claims for violations of N.Y. G.B.L. §§ 349 and 350, (*id.* ¶¶ 56-58), and other unspecified state consumer fraud acts. (*Id.* ¶¶ 59-60.) He also alleges breaches of express warranty, implied warranty of merchantability/fitness for a particular purpose, and the Magnuson-Moss Warranty Act, (*Id.* ¶¶ 61-77), as well as common law claims for fraud and unjust enrichment. (*Id.* ¶¶ 78-79.)

Defendant moves to dismiss all counts in the Amended Complaint. (Def's. Mot. at 2.)

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain facts that do more

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

3

than present a "sheer possibility that a defendant has acted unlawfully." *Id.* In deciding a motion to dismiss, the court will accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). However, allegations that "are no more than conclusions [ ] are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). Further, dismissal for failure to state a claim is appropriate if it is clear from the face of the complaint that a claim is barred as a matter of law. *Biocad JSC v. F. Hoffman-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019). Where an individual plaintiff brings claims on behalf of themselves and a class but fails to state a claim, the court lacks jurisdiction to adjudicate the putative class claims. *See Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 364-65 (S.D.N.Y. Nov. 14, 2022) (collecting cases).

### III. DISCUSSION

#### A. N.Y. G.B.L. Claims

Plaintiff alleges on behalf of himself and the New York Class violations of deceptive business practices under N.Y. G.B.L. § 349 and false advertising under N.Y. G.B.L. § 350. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]" N.Y. G.B.L. § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." *Id.* § 350.

"To successfully assert a claim under either [N.Y. G.B.L. §§ 349 or 350], a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). Conduct is "consumer-oriented" if it

4

"has a broader impact on consumers at large as opposed to on just the plaintiff." *Donnenfeld v. Petro*, Inc., 333 F. Supp. 3d 208, 222 (E.D.N.Y. 2018). This requirement is met so long as the conduct at issue can "potentially affect similarly situated consumers." *Id.* (citing *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015)). The New York Court of Appeals has adopted an objective standard of "materially misleading" whereby the alleged conduct must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (citing *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).[3] The "injury" component of the pleading standard requires the plaintiff to show that the defendant's material deceptive act caused "actual, though not necessarily pecuniary, harm." *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 25-26. "[A] plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302; *Am. Dev. Grp., LLC v. Island Robots of Fla.*, 17-CV-3223 (NGG) (PK), 2019 WL 5790265, at *10 (E.D.N.Y. Oct. 4, 2019). At the motion to dismiss stage, a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Plaintiff does not claim that the Product fails to kill 99.9% of bacteria on laundry or that it fails to work in cold water. Rather, Plaintiff asserts that these claims are deceptive because they imply that the Product will provide a material benefit over standard

---

[3] The standard for both sections, focusing on whether the acts are "likely to mislead a reasonable consumer acting reasonably under the circumstances," is substantively identical, though § 350 is specific to false advertising. *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).

5

washing with detergent. (Am. Compl. ¶ 25.) Plaintiff argues that use of the Product does no more to slow the potential for transmission of diseases and infections than the standard laundering process, as supported by the lack of evidence indicating that survival of bacteria from a standard laundering process poses any risk. (*Id.* ¶¶ 3, 12, 24.)

Plaintiff's argument regarding the misleading nature of the Product's labeling appears to stem from a 2021 TikTok video[4] from McMullan Appliance and Mattress, a family-owned appliance, mattress, and grill store in Ontario, Canada. (*Id.* ¶ 7.) In the video, the spokesperson describes how laundry sanitizer is "totally unnecessary" in light of how most dryers have a sanitization cycle that eliminates most bacteria. (*Id.* ¶ 11.) Plaintiff further asserts that the CDC supports these findings, (*id.* ¶ 12) but the CDC's statements that Plaintiff relies upon were limited to the laundering practices in health care facilities, not domestic environments like the Plaintiff's home. *See* CDC, "Guidelines for environmental infection control in health-care facilities: recommendations of CDC and Healthcare Infection Control Practices Advisory Committee (HICPAC)," at 113 [hereinafter CDC Study], https://www.cdc.gov/infectioncontrol/guidelines/environmental/index.html (last updated July 2019) ("The control measures described in this section of the guideline . . . pertain to laundry services *utilized by health-care facilities, either inhouse or contract, rather than to laundry done in the home.*") (emphasis added).[5] Nevertheless, Plaintiff hollowly asserts that the CDC

---

[4] McMullan Appliance and Mattress, *Laundry Sanitizer is BS*, TikTok (Dec. 30, 2021), https://www.tiktok.com/@mcmullanappliance/video/7047568196009839877 (last visited Oct. 17, 2023).

[5] The court considers the CDC Study Plaintiff cites to for purposes of this motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in

6

Study's findings support the conclusion that "domestic laundering poses virtually no risk of bacteria and viral transmission." (Pl's. Opp. (Dkt. 14) at 4; Am. Compl. ¶ 19.) In turn, Plaintiff alleges he was materially misled by the label because it falsely implied the Product meaningfully reduced the risk of the transmission of bacteria.

Defendant first argues that as a matter of law, Plaintiff's claims under N.Y. G.B.L. §§ 349 and 350 must fail because the Product is registered with the Environmental Protection Agency ("EPA") which reviewed and approved its labeling. (Def's. Mot. at 3-4.)[6] The court need not address this argument wherein the Plaintiff has failed to state a plausible claim that the label was in fact misleading. Because Plaintiff does not challenge the factual accuracy of the label, Plaintiff's argument relies on an assumption that a label stating that the Product kills 99.9% of bacteria must mean that the Product provides a meaningful benefit as compared to

---

it by reference."). However, the court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985 (PKC), 2020 WL 5848619, at *4 (E.D.N.Y. Sept. 30, 2020) (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Spp. 2d 371, 405-06 (S.D.N.Y. 2001).

[6] The court takes judicial notice of the exhibits Defendant submitted with its motion in opposition to Plaintiff's motion to dismiss, including the Product's registration and guidelines concerning disinfectants published by the EPA and CDC. *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 504 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019) ("On a motion to dismiss, courts may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Plaintiff does not dispute the admissibility of the referenced documents; indeed, he refers to Defendant's exhibits in his Opposition. (*See* Pl's. Opp. at 5 n.4.) *See also Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 460 n.1 (S.D.N.Y. 2019).

standard laundering. But the Product's labels make no such comparison between the Product's efficacy in killing bacteria and that of the standard laundering process. The court finds that a reasonable consumer would not go as far as Plaintiff to infer a similar comparison.

Plaintiff's reliance on *In re Dial Complete Mktg. & Sales Pracs. Litig.*, No. 11–MD–2263 (SJM), 2013 WL 1222310 (D.N.H. Mar. 26, 2013) does little to support his argument. (*See* Pl.'s Opp. at 3-4.) Instead, this case only highlights what's missing in Plaintiff's argument. The Dial Corporation marketed "Dial Complete" branded soaps that contained a compound known as triclosan. These soaps were advertised with labels that stated, similar to the Product here, "[Dial Complete] kills 99.99% of germs." *Id.* at *1. The labels also included statements such as "kills more germs than any other liquid hand soap," and "[has been] shown to help reduce disease transmission by 50% compared to washing with a plain soap." *Id.* The plaintiffs alleged that Dial Complete had no greater efficacy in eliminating bacteria than soaps that do not contain triclosan, and that there was no clinical support for the claims in question. *Id.* at *2. The district court denied Dial's motion to dismiss finding that while it may be true that Dial Complete products are more effective at killing bacteria, "at this early stage of the litigation, plaintiffs need not disprove that claim. They need only plead sufficient facts to support their assertion that Dial knowingly misrepresented the antibacterial efficacy of its Dial Complete product line. They have done so." *Id.* Plaintiff seeks the same outcome here—arguing that he need not prove that Defendant's laundry sanitizer is more effective at killing bacteria than the standard laundering process because he has sufficiently pled facts to suggest Reckitt materially misrepresented its Product. (Pl's. Opp. at 2-3.)

The key difference between *In re Dial* and the present case, however, is that Dial expressly compared its products to standard

8

handwashing whereas the Defendant has made no such claim. Plaintiff merely asserts without qualification that consumers would assume what Dial's label had made explicit—that the label is saying that the Product—as compared to the standard laundering process—reduces the risk of infectious disease transmission. This assertion, however, is far more attenuated than the statements in *In re Dial* and in similar deceptive marketing cases, however. *See Brumfield v. Trader Joe's Co.*, No. 17-CV-3239 (LGS), 2018 WL 4168956, at *2 (S.D.N.Y. Aug. 30, 2018) (collecting cases dismissing claims in similar cases when a reasonable consumer would not be deceived by a product's packaging).

The court finds that a reasonable consumer would not read the Product's label to imply a material benefit compared to standard laundering under the circumstances. *Fink*, 714 F.3d at 741. Accordingly, the court finds as a matter of law that the Product's labels are not misleading or deceptive.[7]

Defendant's Motion to Dismiss with respect to Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims is therefore GRANTED.

### B. Other State Consumer Protection Claims

Plaintiff also alleges various other state consumer protection statutes on behalf of himself and the Multi-State Class. The court need not address those other state statutes here. Where the court finds that Plaintiff's individual claims should be dismissed, it lacks jurisdiction to decide the putative class claims. *Lin*, 640 F. Supp. 3d at 364-65; *see also Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 n.22 (2d Cir. 2013) (noting that "the jurisdiction of the district court depends upon its

---

[7] Because the court finds that Plaintiff's claims fail under New York law, the court need not address the parties' preemption argument. *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 242 (2d Cir. 2021) (noting that when a party's claims fail under state law, "the question of federal preemption will be moot").

9

having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs"); *Derbaremdiker v. Applebee's Int'l*, No. 12-CV-1058 (KAM), 2012 WL 4482057, at *9 n.9 (E.D.N.Y. Sept. 26, 2012), *aff'd* 519 F. App'x 77 (2d Cir. 2013) ("[A]lthough plaintiff asserts claims on behalf of potential class members that are predicated on other States' consumer protection laws, his complaint must be dismissed.").

### C.  Warranty Claims

Plaintiff also brings claims for breach of express warranty, breach of the implied warranty of merchantability/fitness for a particular purpose, and violation of the Magnuson Moss Warranty Act. Specifically, Plaintiff claims that the representations that the Product kills 99.9% of bacteria and works in cold water conveyed that the Product would be "defect-free," providing a meaningful benefit in bacteria reduction compared to "the standard laundering process." (Am. Compl. ¶¶ 64-65.)

#### 1.  Express Warranty

In New York, "a buyer must provide the seller with timely notice of an alleged breach of warranty." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (citing N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.")). Claims brought without notice must be dismissed. *Id.* at 144. Defendant asserts Plaintiff failed to give pre-suit notice. (Def's. Mot. at 20.) Plaintiff avers that he did give notice within a reasonable time by way of filing this action on April 24, 2023 after purchasing the product in April 2022. (Pl's. Opp. at 9.) In the alternative, Plaintiff cites to *Gavilanes v. Gerber Prods. Co.*, for the proposition that

the notice requirement does not apply to retail sales. No. 1:20-CV-05558, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021).

While several New York cases have recognized a notice-requirement exception for retail sales, "the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella*, 348 F. Supp. 3d at 143-44 (citing *Silverstein v. Macy & Co.*, 266 A.D. 5, 7, 40 N.Y.S.2d 916 (N.Y. App. Div. 1943) (chin-up bar collapsed while plaintiff was using it, resulting in injuries); *Kennedy v. Woolworth Co.*, 205 A.D. 648, 648, 200 N.Y.S. 121 (N.Y. App. Div. 1923) (candy either injured or killed a minor)). The Southern District of New York in *Wheeler v. Topps Co., Inc.*, expressly disagreed with the court in *Gavilanes*, explaining that the reasoning in *Gavilanes* "relies on the physical harm suffered by plaintiffs that made their case more like a tort than a contract dispute. This interpretation is the dominant one." No. 22-CV-2264 (LGS), 2023 WL 405015, at *5 (S.D.N.Y. Jan. 25, 2023) (collecting cases standing for the proposition that the notice-requirement exception for retail sales only applies in cases involving personal injury). Plaintiff alleges no physical injuries stemming from the use of laundry sanitizer which would implicate the notice requirement in this case.

Moreover, Plaintiff failed to adequately give pre-suit notice to Defendant. Vaguely alleging that he "provide[d] or will provide notice to Defendant" alongside the filing of his complaint are insufficient to plead pre-suit notice and avoid dismissal. *Hawkins v. Coca-Cola Co.*, No. 21-CV-8788 (KMK), 2023 WL 1821944, at *9 (S.D.N.Y. Feb. 7, 2023).

Even if pre-suit notice were not required, Plaintiff's claim would still fall short because he fails to allege that Defendant breached any express warranty it made. "New York breach of express warranty claims require (i) a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for

11

the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach." *Brady v. Basic Rsch., LLC*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015) (emphasis in original); *see also* N.Y. U.C.C. § 2-313(1). The scope of an express warranty "necessarily depends on what a reasonable consumer would believe." *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302 (ENV) (SJB), 2020 WL 4006197, at *14 (E.D.N.Y. July 10, 2020). Warranty claims are analyzed under the same reasonable consumer standard as that of New York's consumer protection statutes reviewed *supra*. *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 119 (E.D.N.Y. 2021).

Given that the court has already held that the Product labeling under N.Y. G.B.L. §§ 349 and 350 would not materially mislead a reasonable consumer, Plaintiff's breach of warranty claim also fails as a matter of law. *See* pp. 4-9, *supra*.

Defendant's Motion to Dismiss with respect to the express warranty claim is therefore GRANTED.

### 2. Implied Warranty of Merchantability/Fitness for a Particular Purpose

Plaintiff's claim for breach of implied warranty also fails for lack of pre-suit notice. *See Int'l Bhd. of Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-CV-1692 (RJM), 2012 WL 13202126, at *23 (E.D.N.Y. Apr. 19, 2012) (dismissing express and implied warranty claims for failure to plead that defendants were given timely notification of breach); *Hubbard v. Gen. Motors Corp.*, No. 95-CV-4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (dismissing express and implied warranty claims because plaintiff's complaint "lack[ed] any allegation that plaintiff notified [the defendant]").

Again, even if Plaintiff were precluded from the notice requirement, his claim would still fail. Plaintiff claims that the goods breached both the implied warranty of merchantability and the

implied warranty of fitness for a particular purpose. Under the implied warranty of merchantability, every contract for the sale of goods contains an implicit warranty that the goods are fit for the ordinary purposes for which such goods are used. *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (citing N.Y. U.C.C. Law § 2–314). The implied warranty of fitness for a particular purpose holds that, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," there is an implied warranty that "the goods shall be fit for such purpose." *Id.* (quoting N.Y. U.C.C. Law § 2–315).

Plaintiff alleges that because the Product "did not provide a meaningful benefit beyond the standard laundering process in terms of sanitizing laundry and reducing bacteria," it breached both the implied warranty of merchantability and the implied warranty to be fit for a particular purpose. (Pl's. Opp. at 10.)

Additionally, Plaintiff must allege privity with the defendant. *Catalano*, 167 F. Supp. 3d at 556 ("Although New York has long since dispensed with the privity requirement for express warranty claims, *see Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 13 (1962), New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 470 (S.D.N.Y. 2020); *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311 (JSR), 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013).

Plaintiff's Amended Complaint, however, does not allege that privity of contract existed between Plaintiff and Defendant. Instead, Plaintiff pleads that the Product has been sold for several years in "grocery stores, warehouse club stores, convenience

stores, big box stores, and online in the States covered by Plaintiff's proposed classes." (Am. Compl. ¶ 24.) Plaintiff has not alleged that he bought the product directly from Defendant. Indeed, he pled the contrary, noting that he bought the Product from stores like Stop & Shop in Hempstead, NY. (*Id.* ¶ 30.) This is insufficient to establish the requisite privity rendering the Plaintiff's claim ineffective as a matter of law. *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 408 (2008).

Accordingly, Defendant's Motion to Dismiss with respect to the implied warranty claims is GRANTED.

### 3. Magnuson Moss Warranty Act

Plaintiff also asserts a claim against Defendant under the Magnuson-Moss Warranty Act ("MMWA") based on the same breach of warranty claims addressed above. "[T]o state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Catalano v. MarineMax*, 590 F. Supp. 3d 487, 510 (E.D.N.Y. 2022) (quoting *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015)). Accordingly, courts have dismissed MMWA claims where a plaintiff has failed to state a claim for breach of warranty. *See, e.g., id.*; *Warren*, 574 F. Supp. 3d at 119-20.

As discussed, Plaintiff has failed to state a claim for breach of the express and implied warranties. Therefore, Plaintiff's claim under the MMWA also fails.

The Defendant's Motion to Dismiss with respect to the MMWA claim is therefore GRANTED.

### D. Common Law Claims

Lastly, Plaintiff's common law claims for fraud and unjust enrichment also fail. Under New York law, a plaintiff must allege, among other things, a material misrepresentation and justifiable

reliance to succeed on a common law fraud claim. *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 353 (S.D.N.Y. 2020). As discussed when considering Plaintiff's N.Y. G.B.L. and warranty claims, Plaintiff has failed to plausibly allege that the Product's labels were misleading, let alone false. Thus, his fraud claim fails.

Moreover, because Plaintiff's unjust enrichment claim is "based on the same allegations as [his] other claims for consumer deception," this claim must also fail. *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808-09 (S.D.N.Y. 2021) (dismissing plaintiff's unjust enrichment claim as duplicative).[8]

The Defendant's Motion to Dismiss as to the fraud and unjust enrichment claims is GRANTED.

## IV. CONCLUSION

In sum, the court GRANTS Defendant's Motion to Dismiss the Amended Complaint in its entirety.

SO ORDERED.

Dated:   Brooklyn, New York
         October 19, 2023

                                     s/Nicholas G. Garaufis
                                     NICHOLAS G. GARAUFIS
                                     United States District Judge

---

[8] Defendant appears to assert a claim of defense against negligent misrepresentation in its Brief. (*See* Def's. Mot. at 18.) Plaintiff has not lodged such a claim in its initial Complaint or in his Amended Complaint. As such, the court does not address the claim. *Hernandez v. Wells*, No. 01-CV-4376 (MBM), 2003 WL 22771982, at *3 (S.D.N.Y. Nov. 24, 2003) (declining to consider claim not raised in complaint but argued in the parties' moving papers).